IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN RE: | ) | No. BK 09 81063 |
| | ) | Chapter 13 |
| RICHARD A. MAGNI AND | ) | |
| TAMMY L. MAGNI | ) | |
| | ) | |
| Debtors. | ) | |

## AFFIDAVIT

| | |
|---|---|
| STATE OF MINNESOTA | ) |
| | ): ss |
| COUNTY OF HENNEPIN | ) |

TONETTE C. HILL being first duly sworn upon oath, deposes and states that I am an employee of U.S. Bank National Association ND, employed in the position of real estate officer; that I am in charge of and have control over the records of U.S. Bank National Association regarding the above-referenced Debtors and all payments which have been made by said Debtors to U.S. Bank National Association from and after the time of the filing of the Chapter 13 Bankruptcy Petition, same occurring on April 27, 2009.

That the Plaintiff's claim herein is listed as secured for reason that Richard A. Magni and Tammy L. Magni, husband and wife, executed a certain note and deed of trust to Plaintiff with regard to the real property legally described as follows:

> LOT 165, SEVILLE SUBDIVISION TO THE CITY OF OMAHA,
> IN DOUGLAS COUNTY, NEBRASKA.

that said Deed of Trust was recorded in the office of the Register of Deeds of Douglas County, Nebraska on April 16, 2003 in the Mortgage Records of said County. That a copy of the above-referenced Deed of Trust is attached hereto and made a part hereof as if fully set forth as Exhibit "A." That a copy of the above-referenced Promissory Note is attached hereto and hereby made a part hereof as if fully set forth as Exhibit "B."

That the Debtors have failed to comply with the terms of the Promissory Note and Deed of Trust by Debtors' failure to pay the monthly mortgage payment to Movant and payments are due from December 6, 2008 through July 6, 2010; and they have failed to pay the post-petition payments, from December 6, 2009 to present.

In addition to post petition arrearage of principal and interest, attorney's fees and filing fees, Defendant has incurred the following debts under the Deed of Trust and Promissory Note:

| | |
|---|---:|
| 1) Inspection fees | $652.00 |
| 2) Annual fee | 90.00 |
| TOTAL | $742.00 |

Copies of the invoices paid by Plaintiff in inspection of the property post-petition are attached hereto as Exhibit C. Annual fee has been incurred pursuant the section entitled "OTHER CHARGES" of the Promissory Note.

The Plaintiff wishes to obtain an Order of Relief from Stay to take action in the sale of the property pursuant to the Deed of Trust, pursuant to this Court's Written Opinion dated April 20th, 2010, for failure of payment.

FURTHER YOUR AFFIANT SAYETH NOT.

DATED this 22nd day of July, 2010.

_____
Tonette C. Hill, Real Estate Officer

SUBSCRIBED AND SWORN TO BEFORE ME this 22nd day of July, 2010.

_____
Notary Public

JAMES B. HAUSCHILD JR.
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of July, 2010, I electronically filed the above and foregoing Affidavit in Support of Motion for Relief from Automatic Stay with the Clerk of the Bankruptcy Court using the CM/ECF system which sent notification of such filing to CM/ECF participants, and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: Richard A. Magni and Tammy L. Magni, 831 N. 148th Avenue, Omaha, Nebraska 68154.

/s/ Paul J. LaPuzza
Paul J. LaPuzza

EXHIBIT A

ACAPS # 20030441002120

_____State of Nebraska_____Space Above This Line For Recording Data_____

# REAL ESTATE DEED OF TRUST

(With Future Advance Clause)  3000137542

☐ Construction Security Agreement

1. **DATE AND PARTIES.** The date of this deed of Trust (Security Instrument) is . __3-7-03__
and the parties, their addresses and tax identification numbers, if required, are as follows:

   TRUSTOR: Richard A. Magni and Tammy L. Magni      1329345l

   ☐ If checked, refer to the attached Addendum incorporated herein, for additional Trustors, their signatures and acknowledgments.

   TRUSTEE: US Bank Trust Company National Association, 1850 Osborne Ave, Oshkosh, WI 54920

   BENEFICIARY: US Bank National Association, ND, 4325 – 17th Ave. SW, Fargo, ND 58103

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Trustor's performance under this Security Instrument. Trustor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Beneficiary, with power of sale, the following described property:

   Lot 165, Seville Subdivision to the City of Omaha, in Douglas County, Nebraska

   The property is located in DOUGLAS at 831 N 148TH AVE,
   (County)      (Address)

   OMAHA Nebraska 68154
   (City)         (ZIP Code)

   Recording Requested by &
   When Recorded Return To:
   US Recordings, Inc
   2925 Country Drive Ste 201
   St. Paul, MN 55117

   Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

   NEBRASKA – HOME EQUITY LINE OF CREDIT DEED OF TRUST (NOT FOR FNMA, FHLMC, FHA OR VA USE)

   Expere™ © 1994 Bankers Systems, Inc., St. Cloud, MN Form USBOCP-DT-NE 9/5/2001

   (page 1 of 6)

exceed $ _48,100.00_ . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Beneficiary's security and to perform any of the covenants contained in this Security Instrument

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(You must specifically identify the debt(s) secured and you should include the final maturity date of such debt(s).)*

   B. All future advances from Beneficiary to Trustor or other future obligations of Trustor to Beneficiary under any promissory note, contract, guaranty, or other evidence of debt executed by Trustor in favor of Beneficiary after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs This Security Instrument, each Trustor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Trustor, or any one or more Trustor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

   C. All other obligations Trustor owes to Beneficiary, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Trustor and Beneficiary.

   D. All additional sums advanced and expenses incurred by Beneficiary for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Beneficiary under the terms of the Security Instrument.

   In the event that Beneficiary fails to provide any necessary notice of the right of rescission with respect to any additional indebtedness secured under paragraph B of this Section, Beneficiary waives any subsequent security interest in the Trustor's principal dwelling that is created by this Security Instrument (but does not waive the security interest for the debts referenced in paragraph A of this section).

5. **DEED OF TRUST COVENANTS.** Trustor agrees that the covenants in this section are material obligations under the Secured Debt and this Security Instrument. If Trustor breaches any covenant in this section, Beneficiary may refuse to make additional extensions of credit and reduce the credit limit. By not exercising either remedy on Trustor's breach Beneficiary does not waive Beneficiary's right to later consider the event a breach if it happens again.

   **Payments.** Trustor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

   **Prior Security Interests.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Trustor agrees to make all payments when due and to perform or comply with all covenants. Trustor also agrees not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Beneficiary's prior written approval.

   **Claims Against Title.** Trustor will pay all taxes (including any tax assessed to this Deed of Trust), assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Beneficiary may require Trustor to provide to Beneficiary copies of all notices that such amounts are due and the receipts evidencing Trustor's payment. Trustor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Trustor agrees to assign to Beneficiary, as requested by Beneficiary, any rights, claims or defenses Trustor may have against parties who supply labor or materials to maintain or improve the Property.

   **Property Condition, Alterations and Inspection.** Trustor will keep the Property in good condition and make all repairs that are reasonably necessary. Trustor shall not commit or allow any waste, impairment, or deterioration of the Property. Trustor agrees that the nature of the occupancy and use will not substantially change without Beneficiary's prior written consent. Trustor will not permit any change in any license, restrictive covenant or easement without Beneficiary's prior written consent. Trustor will notify Beneficiary of all demands, proceedings, claims, and actions against Trustor, and of any loss or damage to the Property.

Beneficiary or Beneficiary's agents may, at Beneficiary's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Any inspection of the Property shall be entirely for Beneficiary's benefit and Trustor will in no way rely on Beneficiary's inspection.

Beneficiary or Beneficiary's agents may, at Beneficiary's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Any inspection of the Property shall be entirely for Beneficiary's benefit and Trustor will in no way rely on Beneficiary's inspection.

**Authority to Perform.** If Trustor fails to perform any duty or any of the covenants contained in this Security Instrument, Beneficiary may, without notice, perform or cause them to be performed. Trustor appoints Beneficiary as attorney in fact to sign Trustor's name or pay any amount necessary for performance. Beneficiary's right to perform for Trustor shall not create an obligation to perform, and Beneficiary's failure to perform will not preclude Beneficiary from exercising any of Beneficiary's other rights under the law or this Security Instrument.

**Leaseholds; Condominiums; Planned Unit Developments.** Trustor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or planned unit development, Trustor will perform all of Trustor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**Condemnation.** Trustor will give Beneficiary prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Trustor authorizes Beneficiary to intervene in Trustor's name in any of the above described actions or claims. Trustor assigns to Beneficiary the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document. 17384

**Insurance.** Trustor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Beneficiary requires. The insurance carrier providing the insurance shall be chosen by Trustor subject to Beneficiary's approval, which shall not be unreasonably withheld. If Trustor fails to maintain the coverage described above, Beneficiary may, at Beneficiary's option, obtain coverage to protect Beneficiary's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Beneficiary and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Trustor shall immediately notify Beneficiary of cancellation or termination of the insurance. Beneficiary shall have the right to hold the policies and renewals. If beneficiary requires, Trustor shall immediately give to Beneficiary all receipts of paid premiums and renewal notices. Upon loss, Trustor shall give immediate notice to the insurance carrier and Beneficiary. Beneficiary may make proof of loss if not made immediately by Trustor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Beneficiary's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Trustor. If the Property is acquired by Beneficiary, Trustor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Beneficiary to the extent of the Secured Debt immediately before the acquisition.

**Financial Reports and Additional Documents.** Trustor will provide to Beneficiary upon request, any financial statement or information Beneficiary may deem reasonably necessary. Trustor agrees to sign, deliver, and file any additional documents or certifications that Beneficiary may consider necessary to perfect, continue, and preserve Trustor's obligations under this Security Instrument and Beneficiary's lien status on the Property.

6. **WARRANTY OF TITLE.** Trustor warrants that Trustor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey, and sell the Property to Trustee, in trust, with power of sale. Trustor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **DUE ON SALE.** Beneficiary may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

8. **DEFAULT.** Trustor will be in default if any of the following occur:

    **Fraud.** Any Consumer Borrower engages in fraud or material misrepresentation in connection with the Secured Debt that is an open end home equity plan.

    **Payments.** Any Consumer Borrower on any Secured Debt that is an open end home equity plan fails to make a payment when due.

Property. Any action or inaction by the Borrower or Trustor occurs that adversely affects the Property or Beneficiary's rights in the Property. This includes, but is not limited to, the following: (a) Trustor fails to maintain required insurance on the Property; (b) Trustor transfers the Property; (c) Trustor commits waste or otherwise destructively uses or fails to maintain the Property such that the action or inaction adversely affects Beneficiary's security; (d) Trustor fails to pay taxes on the Property or otherwise fails to act and thereby causes a lien to be filed against the Property that is senior to the lien of this Security Instrument; (e) a sole Trustor dies; (f) if more than one Trustor, any Trustor dies and Beneficiary's security is adversely affected; (g) the Property is taken through eminent domain; (h) a judgment is filed against Trustor and subjects Trustor and the Property to action that adversely affects Beneficiary's interest; or (i) a prior lienholder forecloses on the Property and as a result, Beneficiary's interest is adversely affected.

**Executive Officers.** Any Borrower is an executive officer of Beneficiary or an affiliate and such Borrower becomes indebted to Beneficiary or another lender in an aggregate amount greater than the amount permitted under federal laws and regulations.

9. **REMEDIES ON DEFAULT.** In addition to any other remedy available under the terms of this Security Instrument, Beneficiary may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Trustor is in default. In some instances, federal and state law will require Beneficiary to provide Trustor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions. Each Trustor requests a copy of any notice of default and any notice of sale thereunder be mailed to each Trustor at the address provided in Section 1 above.

At the option of the Beneficiary, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter.

If there is a default, Trustee shall, at the request of the Beneficiary, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Trustor at such time and place as Trustee designates. Trustee shall give notice of sale including the time, terms and place of sale and a description of the property to be sold as required by the applicable law in effect at the time of the proposed sale.

Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, shall pay to Beneficiary all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Trustor. Beneficiary may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

The acceptance by Beneficiary of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Beneficiary's right to require complete cure of any existing default. By not exercising any remedy on Trustor's default, Beneficiary does not waive Beneficiary's right to later consider the event a default if it happens again.

10. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** If Trustor breaches any covenant in this Security Instrument, Trustor agrees to pay all expenses Beneficiary incurs in performing such covenants or protecting its security interest in the Property. Such expenses include, but are not limited to, fees incurred for inspecting, preserving, or otherwise protecting the Property and Beneficiary's security interest. These expenses are payable on demand and will bear interest from the date of payment until paid in full at the highest rate of interest in effect as provided in the terms of the Secured Debt. Trustor agrees to pay all costs and expenses incurred by Beneficiary in collecting, enforcing or protecting Beneficiary's rights and remedies under this Security Instrument. This amount may include, but is not limited to, Trustee's fees, court costs, and other legal expenses. To the extent permitted by the United States Bankruptcy Code, Trustor agrees to pay the reasonable attorneys' fees Beneficiary incurs to collect the Secured Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code. This Security Instrument shall remain in effect until released. Trustor agrees to pay for any recordation costs of such release.

11. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Trustor represents, warrants and agrees that:
A.  Except as previously disclosed and acknowledged in writing to Beneficiary, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.12776

Expere™ ©1994 Bankers Systems, Inc., St. Cloud, MN  Form USBOCP-DT-NE  9/5/2001

B. Except as previously disclosed and acknowledged in writing to Beneficiary, Trustor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

C. Trustor shall immediately notify Beneficiary if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Trustor shall take all necessary remedial action in accordance with any Environmental Law.

D. Trustor shall immediately notify Beneficiary in writing as soon as Trustor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

12. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Trustor will not be required to pay to Beneficiary funds for taxes and insurance in escrow.

13. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Trustor signs this Security Instrument but does not sign an evidence of debt, Trustor does so only to mortgage Trustor's interest in the Property to secure payment of the Secured Debt and Trustor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Beneficiary and Trustor, Trustor agrees to waive any rights that may prevent Beneficiary from bringing any action or claim against Trustor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Trustor and Beneficiary.

14. **SEVERABILITY; INTERPRETATION.** This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the section of this Security Instrument are for convenience only and are not to be used interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

15. **SUCCESSOR TRUSTEE.** Beneficiary, at Beneficiary's option, may from time to time remove Trustee and appoint a successor trustee without any formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

16. **NOTICE.** Unless otherwise required by law, any notice shall be given be delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one trustor will be deemed to be notice to all trustors.

17. **WAIVERS.** Except to the extent prohibited by law, Trustor waives all appraisement and homestead exemption rights relating to the Property.

18. **LINE OF CREDIT.** The Secured Debt includes a revolving line of credit. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

19. **APPLICABLE LAW.** This Security Instrument is governed by the laws as agreed to in the Secured Debt, except to the extent required by the laws of the jurisdiction where the Property is located, and applicable federal laws and regulations.

20. **RIDERS.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument.
(check all applicable boxes)
≠ Assignment of Leases and Rents ~ Other

21. ÷ **CONSTRUCTION LOAN.** This Security Instrument is a construction security interest which secures an obligation incurred for the construction of an improvement on the Property.

22. } **ADDITIONAL TERMS.**

Expere™ ©1994 Bankers Systems, Inc., St. Cloud, MN Form USBOCP-DT-NE 9/5/2001

(page 5 of 6)

**SIGNATURES.** By signing below, Trustor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Trustor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

_____ 3-7-03      _____ 3-7-03
(Signature) Richard A. Magni     (Date)        (Signature) Tammy L. Magni        (Date)

ACKNOWLEDGMENT:
(Individual)   STATE OF ..... Nebraska ........, COUNTY OF ..... Douglas .......... } ss.
This instrument was acknowledged before me this ..... 7th ..... day of ..... March ..... 2003.
by ..... Richard A. Magni and Tammy L. Magni .....
My commission expires: 9/1/04

GENERAL NOTARY-State of Nebraska
MARY S. SUMPTER
My Comm. Exp. Sept. 1, 2004
(Seal) ..... _____
(Notary Public)
3-7-03

Prepared By:
US Bank National Association, ND
4325 - 17th Ave. SW
Fargo, ND 58103

Return To:
US Recordings
2925 Country Drive
St. Paul, MN 55117

U13293451-01FB06
DEED OF TRUST
LOAN# 03000137542
US Recordings

Expere™  ©1994 Bankers Systems, Inc., St. Cloud, MN  Form USBOCP-DT-NE 9/5/2001

| Borrower's Name and Address | Lender's Name |
|---|---|
| RICHARD A MAGNI    TAMMY L MAGNI<br>831 NORTH 148TH AVE<br>OMAHA        NE<br>68154-1916 | U.S. Bank National Association ND |

"You" means each borrower above, jointly and severally.    "We" or "us" means the lender named above.

Account # 3000137542    Draw Period 15 years    Maturity Date 04/06/2028
Date 03/07/2003    Repayment Period 10 years    Billing Cycle: monthly
Trans. Acct. #    Payment Date 6th
Line of Credit $ 48,100.00    of every month

## U.S. BANK EQUILINE AGREEMENT

**GENERALLY:** This is an agreement about your home equity line of credit. Many of the terms we use in this agreement have special meanings. The term "Loan Account Balance" means the sum of the unpaid principal of loans made under this plan, plus unpaid but earned finance charges, plus any credit insurance premiums that are due. "Transaction Account" means a deposit account you carry with U.S. Bank, N.A. The number of this account is listed near the top of the form on the line labeled "Trans. Acct. #." "Line of Credit" means the maximum amount of principal we will ordinarily allow you to owe us under this plan at any time.

In addition, we will use the following terms for this home equity plan: "Draw Period" is the time during the plan that you may request advances and will make payments on your loan account balance. The "Repayment Period" is the time during the plan that you must repay your loan account balance but cannot get further advances. Except where otherwise indicated, the disclosures contained in this agreement apply to both the draw and repayment periods.

If any term of this agreement violates any law or for some other reason is not enforceable, that term will not be part of this agreement.

**TAX DEDUCTIBILITY:** We make home equity "EQUILINE" loans where the line of credit ceiling can be (when combined with other liens) up to 125% of the value of the property. We want to make sure you are aware that interest may not be deductible to the extent (for that portion of your indebtedness) that the residence does not adequately secure the loan. This is true when (and to the extent) total liens on the property exceed its fair market value. You should consult a tax advisor regarding the deductibility of interest and charges under this home equity plan.

**REQUESTING A LOAN:** You request a loan under this plan whenever you:
* Write a check using one of the special checks you have for that purpose.
* Use the VISA® credit card we supply you to make purchases or receive cash loan advances.
* You may also choose to attach this Line of Credit to your Transaction Account with our affiliate U.S. Bank, N.A. If you "overdraw" the Transaction Account, by any method allowed for withdrawal from that account, you will get an advance on this Line of Credit, up to your credit limit. (If you attach this Line of Credit to your Transaction Account, when you "overdraw" the deposit account and an advance can be made from your Line of Credit, you will not be charged an overdraft charge on your Transaction Account if you have not thereby exceeded your credit limit under this plan. If you elect this feature, then the Transaction Account to which this Line of Credit is attached will be listed above on the line labeled "Trans. Acct. #".)

However, we will not ordinarily grant any request for a loan which would cause the unpaid principal of your loan account balance to be greater than the Line of Credit listed in this agreement. We may, at our option, grant such a request without obligating ourselves to do so in the future.

**TRANSACTION LIMITATIONS:** There are a few "indirect" limitations on the transactions you can make to this account. These are not limitations on this account, but limitations that are part of an access method. For example, if you attach this account to your transaction account (overdraft protection) and if you have an ATM card or debit card that can access that transaction account, then the electronic funds transfer limitations that are part of your ATM or debit card are "indirect" limits on the number and dollar amount of your access to this account per day by those methods. These are not really limits on the amount or number of advances you can get from this account, but are limits inherent in ATM and debit card transactions. Also, if you attach this account to your deposit account, then advances from this account arising from "overdrafts" will occur, once a day, in multiples of $100.

**FIXED RATE LOAN OPTION "LOCK FEATURE":** At any time during the Draw Period you may convert ("lock") the interest rate and repayment schedule, for up to the amount of the then outstanding credit line balance (not including any previously locked principal balance) subject to the following conditions:
* The lock period will be for a term that you select, with a maximum term of (a) 20 years or (b) the then remaining term of the repayment period, whichever is less.
* The lock period cannot be less than 12 months.
* The minimum lock amount is $2,000.00.
* You can have no more than 3 locks in effect at any one time. The fee for each lock will be $50.
* The unpaid principal balance of any lock amount is part of your maximum credit limit, and a principal portion of each payment toward a lock amount will replenish your credit limit as of the date a payment is posted.
* Each lock is a separate event; you cannot add an amount to a lock after it is established.

**Lock rate.** The fixed simple interest rate for a lock will be determined by reference to the Wall Street Journal Prime Rate in effect on the date of the lock plus (or minus) a margin. You can call us to find out the then current Prime Rate and margin.

**Lock payment.** Each lock will have its own payment amount, determined by applying the rate to the lock amount for the term of the lock, and producing equal monthly payments over the term of the lock.

**Minimum payment.** Your minimum payment each month will be determined by adding the scheduled lock payment(s) to the minimum payment amount determined under the "HOW YOU REPAY YOUR LOAN" section of this agreement with respect to the "unlocked" portion of your outstanding balance. You may prepay a lock amount in whole or in part, but any prepayment will not excuse any later scheduled lock payment until the lock is paid in full.

**Method.** You can establish a lock by contacting us. A full disclosure of all terms of the lock will be provided to you at the time the lock is established.

**HOW FINANCE CHARGES ARE COMPUTED:** To calculate the actual daily balance, take the loan account balance at the beginning of the day and subtract any accrued but unpaid finance charges and insurance premiums (if any). Next, add all new loans posted to the account that day and subtract the portion of any payments or credits received that day which apply to the repayment of the loans.

The average daily balance is determined by taking the sum of all the actual daily balances divided by the number of days in the billing cycle.

Finance charges will begin to accrue immediately when a loan is advanced. To calculate the finance charge for a billing cycle, apply the daily periodic rate of finance charge to the average daily balance of the loan account times the number of days in the billing cycle.

If the daily periodic rate varies during the billing cycle, the finance charge will be calculated by applying each daily periodic rate of finance charge to the average daily balance of the loan account times the number of days the rate was in effect. The sum of these products is the finance charge.

**INITIAL RATE:** The initial daily periodic rate of **FINANCE CHARGE** is 0.01438 % which corresponds to an **ANNUAL PERCENTAGE RATE** of 5.25000 %. The annual percentage rate includes interest and not other costs.

**Disclosures:** The disclosures of initial daily periodic rate of **FINANCE CHARGE** and **ANNUAL PERCENTAGE RATE** in the previous paragraph, and in the next paragraph (if it is checked and completed) are based on rates and conditions as of 03/07/2003

Expere® © 1983 Bankers Systems, Inc., St. Cloud, MN Form USBOCPHE-NDX 10/1/2002

3000137542

☐ The **INITIAL RATE** above will remain fixed until _____.
Beginning on that day, the daily rate and the corresponding annual percentage rate will be the sum of the index and margin, and can change as provided below in the paragraph titled **VARIABLE RATE**. After that day the rates will be subject to further adjustments and limitations, and produce the effects described below.
This initial rate represents a discount from the rate that will apply. If this discount were not in effect, then the daily periodic rate of

**FINANCE CHARGE** would have been _____%, which would correspond to an **ANNUAL PERCENTAGE RATE** of_____%.

**VARIABLE RATE:** The annual percentage rate may change, and will be  1.000 ABOVE _____ (This amount is known as the "margin.") the following "base rate": the highest rate on corporate loans at large U.S. money center commercial banks that The Wall Street Journal publishes as the Prime Rate.

If this base rate increases (after any fixed initial rate period, if so provided), the annual percentage rate will increase. An increase will take effect on the day the base rate changes. An increase in the base rate, and an increase in the rate caused by the loss of a preferential rate (such as that made to a customer who arranges for electronic payments) will result in an increase in the finance charge and may have the effect of increasing your minimum monthly payment amount (depending on the payment option you chose and the amount of the increase). A decrease in the base rate will have the opposite effect on your required minimum monthly payment.

The annual percentage rate will not increase more often than once a day. A decrease will have the opposite effect of an increase disclosed above.

The "annual percentage rate" referred to in this section is the annual rate which corresponds to the periodic rate applied to the balance as described above. This corresponding **ANNUAL PERCENTAGE RATE** will never exceed 25%. The annual percentage rate will also never exceed the highest allowable rate for this type of agreement as determined by applicable state or federal law.

The **ANNUAL PERCENTAGE RATE** will never decrease below 5%.

**HOW YOU REPAY YOUR LOANS - DRAW PERIOD:** In addition to the payment due under your fixed rate option, if any, on or before your payment date during the Draw Period, you agree to make a minimum payment. The minimum payment is:

(a) ☐ the accrued finance charges and credit insurance premiums (if any) on the last day of the billing cycle.

(b) ☒ 1% of your account's principal outstanding balance and credit insurance premiums (if any) on the last day of the billing cycle, or $50.00, or the accrued finance charges and credit insurance premiums (if any), whichever is greater.

(c) ☐ 2% of your account's principal outstanding balance and credit insurance premiums (if any) on the last day of the billing cycle, or $50.00, or the accrued finance charges and credit insurance premiums (if any), whichever is greater.
If the interest accrued and credit insurance premiums (if any) on the last day of the billing cycle is greater than your selected payment, you will be billed (or have automatically withdrawn) the greater amount.

All payments due under this agreement will have the same due date.

**PRINCIPAL REDUCTION:** Under option (a) above, during the Draw Period the minimum payment on the revolving portion of the loan will not reduce the principal outstanding on your line. Under both options (b) and (c), during the Draw Period the minimum payment may not fully repay the principal that is outstanding on your line.

**HOW YOU REPAY YOUR LOANS - REPAYMENT PERIOD:** In addition to the payment due under your fixed rate option, if any, on or before each payment date during the repayment period, you agree to make a minimum payment to reduce your debt. The minimum payment amount is the greater of $100.00, or the amount of the accrued finance charges plus 0.83333% of the principal loan balance on the last day of the Draw Period.

**ADDITIONAL REPAYMENT TERMS:** If your loan account balance on a payment date is less than the minimum payment amount, you must pay only the loan account balance.
You can pay off all or part of what you owe at any time. However, so long as you owe any amount you must continue to make your periodic minimum payment.

The amounts you pay will be applied first to credit insurance premiums that are due (if any), then to any finance charges that are due, then to principal, and finally to any other charges that you owe. If the minimum payment amount is not met, the payment will be applied equally to any principal owed on the locked loan(s) and to the Line of Credit.

**FINAL PAYMENT:** At the end of the repayment period listed in this agreement, you must pay the amount of any remaining loan account balance outstanding. The minimum payments may not be sufficient to fully repay the principal that is outstanding on your line. If they are not, you will be required to pay the entire outstanding balance in a single balloon payment.
We are not obligated to refinance your loan at that time, but will consider your request to do so. If you refinance this account at maturity, you may have to pay some or all of the closing costs normally associated with a new loan even if you obtain financing from us.

**NEGATIVE AMORTIZATION:** In the event that the minimum payment (described in this agreement) does not equal or exceed the amount of any credit insurance premiums and accrued finance charges, the unpaid portion will be carried over to subsequent billing periods and payments made for those periods will first be applied to the carryover amount, then to the current billing cycle fees, charges and principal. This is called negative amortization. Negative amortization will increase the amount you owe us and reduce the equity in your home.

**AUTOMATIC WITHDRAWAL:** You authorize us to automatically withdraw your payment from your Transaction Account on each payment date. If your loan account balance is less than the minimum payment amount, we will withdraw only the amount necessary to reduce your loan account balance to zero. If you choose automatic payments, the payments may end because there is not enough money in the deposit account to cover the minimum payment. They may also end if the account is closed, or if you cancel the automatic payments.

You ☒ do    ☐ do not    want Automatic Withdrawal

Account number for automatic payment:
_____ 105700775577 _____
X _____Signature_____    X _____Signature_____

☐ **AUTOMATIC PAYMENT PREFERRED RATE**
By arranging for automatic loan payments, your interest rate and annual percentage rate are "preferred" rates. If you cause these automatic payments to end, your interest rate will increase as of the first payment date that your payment is not automatically made. This increase will be in the amount of  0.00000 % per year. (Your "margin," that is, the amount added to the base rate to get to your interest rate, will be increased by this amount if you lose this preference.)

**SECURITY:** We have secured your obligations under this plan by taking a security interest (by way of a separate security agreement, mortgage or other instrument) in the following property, described by item or type:

831 N 148TH AVE
OMAHA, NE 68154

Collateral securing other loans you may have with us may also secure this loan.
Property insurance is required. You may buy property insurance from anyone you want who is acceptable to us. You are not required to purchase insurance from us (the Bank), or any affiliated insurance agency. Insurance is available through other agents and your choice of insurance provider will not affect our (the Bank's) credit decision or any credit terms in any way.

Expere℠ © 1983 Bankers Systems, Inc., St. Cloud, MN Form USBOCPHE-NDX 10/1/2002

**SECURITY INTEREST IN DEPOSIT ACCOUNTS AT U.S. BANK, N.A.**
**Governing law:** For purposes of this security interest, we agree that the law of the state of North Dakota will control as to the creation, perfection, and effect of perfection of the interest granted in this paragraph. (Technically speaking, we are agreeing that North Dakota is your jurisdiction, as provided in N.D. Stat. § 41-9-24.)
**Grant:** You grant to us a security interest in any and all deposit accounts (demand, time, savings, passbook, and specifically including but not limited to any certificated time accounts) you currently have or hereafter create with U.S. Bank, N.A. (our affiliate).
**Exception:** This grant does not apply to accounts that constitute a part of any qualified retirement plan (such as an Individual Retirement Account), any retail repurchase agreement, or any account where your only right is clearly and solely in a representative capacity.
**Secures:** This security interest secures the payment of this debt and any other debt you may owe us, now or hereafter.
**Usage:** You give us the right to direct the U.S. Bank, N.A. to restrict or prohibit further withdrawals from your accounts, and to comply with our instructions directing disposition of funds in your accounts, including but not limited to, the right to apply such funds toward payment of the secured debts. While we have the right to do this at any time, and without notice, it is our present intention to exercise these rights only in the event of your default on this or any other secured obligation, and to provide notice to you.
U.S. Bank, N.A. agrees to comply with our instructions for disposition of funds in your accounts without first obtaining your consent (other than the consent contained and expressed in this agreement).
You understand that U.S. Bank, N.A. is our affiliate.
**Setoff:** You also acknowledge that U.S. Bank, N.A. has a right of setoff in the event you owe money to U.S. Bank, N.A. This right of setoff, in the event of a conflict with the security interest granted here, will be subordinate to this security interest.
**Priority:** The residence that secures this loan is the primary security. The security interest granted herein (in deposit accounts) will be resorted to only in the event of a deficiency in the equity of the residence.

**ASSUMPTION:** Someone buying your house cannot assume the remainder of the mortgage on the original terms.

**CREDIT INSURANCE:** Credit life, credit accident and sickness (disability) insurance coverage quoted below, are not required to obtain credit and we will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). Your signature(s) below means you want the coverage(s) signed for, and ONLY those coverage(s). The rates (per $100) listed below are applied to the outstanding balance of your credit line plus any outstanding locked balance to determine the premium you owe for one billing cycle.

**CREDIT LIFE:**
☐ Single: Premium: $ _____ Birthdate _____
Insured: _____

X _____ Date _____

☐ Joint: Premium: $ _____ Birthdate _____
1st Insured: _____

X _____ Date _____
2nd Insured: _____ Birthdate _____

X _____ Date _____

**CREDIT DISABILITY:**
☐ Single: Premium: $ _____ Birthdate _____
Insured: _____

X _____ Date _____

**NONE: YOU do NOT desire credit insurance of any kind on this account.** (All borrowers/debtors sign below)

X _[signature]_ Date 3-7-03
X _[signature]_ Date 3-7-03

**CHARGES OTHER THAN YOUR PERIODIC FINANCE CHARGES ("OTHER CHARGES"):** You agree to pay the following additional charges:

♦ **Annual Fee:** A non-refundable annual fee of $ 90.00
For plans with an annual fee, we waive this fee for the first year of a plan and we charge the fee to the account on the first anniversary of the plan and each year thereafter, including the repayment period.

♦ **Prepayment Penalty:** A prepayment penalty of 1% of the Line of Credit (with a minimum of $100 and a maximum of $350) if you prepay in full and close this Line of Credit within 3 years from today's date.

♦ **Minnesota Mortgage Registration Tax:** If real property securing this loan is located in Minnesota, a mortgage registration tax equal to $0.23 per $100 (or portion thereof) of the amount of the Line of Credit secured by such property.

♦ **Kansas Mortgage Registration Tax:** If real property securing this loan is located in Kansas, a mortgage registration tax equal to $0.26 per $100 (or portion thereof) of the amount of the Line of Credit secured by such property.

♦ **Florida Documentary Stamps:** In Florida, you will have to pay the documentary stamp tax equal to $0.35 per $100 of the limit of your line of credit. **The documentary stamp tax is (or will be) paid on the mortgage or deed of trust.**

♦ **Cash Advance Fee:** 2% of each cash advance using a VISA Gold Card issued on this account. The minimum fee for each advance is $1.50. The maximum is $10.00.

♦ **Late Charge:** If any payment is not made within 5 days after its due date, you agree to pay a late payment fee of $25.00.

♦ **Stop Payment:** If you issue a stop payment order on any check written against the Account, you will pay us a fee of $25.00.

♦ **Returned Payment:** If you pay us with a check or an ACH payment which is returned to us unpaid by the payor, you agree to pay us a returned check fee of $25.00.

♦ **Overline Fee:** If you borrow an amount against the Account in excess of your Line of Credit, you agree to pay us an Overline fee of $25.00. This fee will apply each day we pay an advance and you are over your credit line at the end of that day.

♦ **Returned Advance Request:** If we return any checks that would, if paid, cause you to exceed your Line of Credit, you agree to pay us a Returned Advance Request fee of $25.00 per check.

| | |
|---|---|
| Points | $ _____ |
| Origination Fee | $ _____ |
| Appraisal | $ _____ |
| Official Fees | $ _____ |
| Title Insurance | $ _____ |
| Title Search | $ _____ |
| Flood Zone Search | $ _____ |
| Broker Fee | $ _____ |
| Document Preparation Fee | $ _____ |
| Title Service Fee | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |

**COSTS OF COLLECTION:** You agree to pay the costs we incur to collect this debt and realize on any collateral in the event of your default.
In the event of your bankruptcy, and without regard to your state of residence, these costs will include your reasonable attorney's fees for an attorney who is not our salaried employee in the bankruptcy proceedings.
The following additional fees and issues will depend on whether we have to collect this loan in a listed state:
In **Alabama** if the unpaid balance is more than $300, these costs will include our reasonable attorney's fees (for an attorney who is not our salaried employee) if it is necessary to bring suit up to 15% of the amount due and payable under this note.
In **Arizona, California, Illinois, Kentucky,** Maryland, **Massachusetts, Michigan, Minnesota, Mississippi, Montana,**

_(page # of #)_

Experti © 1983 Bankers Systems, Inc., St. Cloud, MN Form USBOCPHE-NDX 10/1/2002

Nevada, New Mexico, Oregon, Pennsylvania, Rhode Island, South Dakota, Tennessee, Utah, Vermont, Virginia, and Washington these costs will include our reasonable attorney's fees (for an attorney who is not our salaried employee).

In **Arkansas** these costs will include our reasonable attorney's fees (for an attorney who is not our salaried employee) not to exceed 10% of the amount of principal and accrued interest.

In **Colorado, North Carolina, and South Carolina** these costs will include our reasonable attorney's fees (for an attorney who is not our salaried employee) not to exceed 15% of the unpaid debt after default.

In **Delaware**, these costs will include costs of alternative dispute resolution, or other collection costs actually incurred by us should you be in default, including reasonable attorney's fees when the attorney is not a regularly salaried employee of ours, and including fees and charges of collection agencies.

In **Florida** these costs will include reasonable attorney's fees that we incur in legal proceedings to collect or enforce this debt should you be in default.

In **Georgia**, these costs include attorney's fees of 15% of the principal and interest then owed. You waive and renounce any exemption you may be entitled to under Georgia law as to any property that secures this debt. You assign any such exemption to us.

In **Idaho** these costs will include our reasonable attorney's fees (for an attorney who is not our salaried employee). This provision for attorney's fees does not apply if this loan is a consumer loan with a principal amount of $1,000.00 or less.

In **Indiana**, these costs will include our reasonable attorney's fees (for an attorney who is not our salaried employee); and in any collection efforts, you waive any relief you might be entitled to from evaluation and appraisement.

In **Iowa**, if the credit limit is greater than $25,000 then these costs include our reasonable attorney's fees to collect this note, including such fees on appeal.

In **Louisiana**, these costs include our reasonable attorney's fees not to exceed 25% of the unpaid debt after default and referral to an attorney for collection.

In **Maine, Nebraska, North Dakota, Ohio and West Virginia** these costs will not include attorney's fees.

In **Kansas** these costs will include our reasonable attorney's fees or collection agency fees, up to 15% of the unpaid amount due and payable under this note. We are entitled to the collection of attorneys' fees or collection agency fees, but not both. This provision is applicable only if collection is handled by someone other than a salaried employee of ours.

In **Missouri** these costs will include our reasonable attorney's fees (for an attorney who is not our salaried employee) if it is necessary to bring suit up to 15% of the amount due and payable under this note.

In **New Hampshire**, this includes our reasonable attorneys' fees. If you successfully assert a partial defense or set-off, recoupment or counterclaim in an action we bring, the court may reduce the amount of attorneys' fees that we may recover from you. If you prevail in an action or defense against us, you may recover the amount of your reasonable attorney's fees.

In **Oklahoma** these costs will include our reasonable attorney's fees (for an attorney who is not our salaried employee) not to exceed 15% of the unpaid debt after default; this provision for attorney's fee does not apply to certain supervised loans as provided in Okla. Statutes 14A §3-514.

In no state or event do we intend to claim or collect attorney's fees in circumstances when we are not entitled to do so.

**CHANGING THE TERMS OF THIS AGREEMENT:** Generally, we may not change the terms of this agreement. However, we may change the terms in the following circumstances:

♦ If this is a variable rate plan, we may change the index and margin if the original index described in this agreement becomes unavailable. Any new index will have a historical movement similar to the original, and, together with a new margin, will produce a similar interest rate.

♦ We may make changes that you have agreed to in writing.

♦ We may make changes that unequivocally benefit you.

If we are required to send notice of a change in terms, we will send the notice to your address listed in this agreement. (You should inform us of any change in address.)

**DEFAULT:** You will be in default on this agreement if any of the following occur:
(1) You engage in fraud or material misrepresentation, by your actions or failure to act, in connection with any phase of this home equity Line of Credit (except in Iowa, Missouri, and Kansas, though such fraud may cause or contribute to a default under paragraph 3 of this section);
(2) Subject to any right to cure you may have, if any, you do not meet the repayment terms or otherwise fail to perform any obligation under this Agreement or any other agreement you have with us (In Iowa, this means, as to payments, failure to make a payment within 10 days of when it is due.);
(3) Your action or inaction adversely affects the collateral or our rights in the collateral, including but not limited to: (a) failure to maintain required insurance on the dwelling; (b) your transfer of the property; (c) failure to maintain the property or use of it in a destructive manner; (d) commission of waste; (e) failure to pay taxes on the property or otherwise fail to act and thereby cause a lien to be filed against the property that is senior to our lien; (f) death; (g) the property is taken through eminent domain; (h) a judgment is filed against you and subjects you and the property to action that adversely affects our interest; or (i) a prior lien holder forecloses on the property and as a result, our interest is adversely affected.
(4) You become an Executive Officer of Bank or a related company.

**COLLATERAL PROTECTION INSURANCE:** Unless you provide us with evidence of the insurance coverage required by your agreement with us, we may purchase insurance at your expense to protect our interests in your collateral. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the collateral. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by our agreement. If we purchase insurance for the collateral, you will be responsible for the costs of that insurance, including interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total outstanding balance of obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

**CASH ADVANCES:** Cash advances may be obtained with your VISA® CARD at most FastBANK®, PLUS® SYSTEM, and UBANK® automated teller (ATM) locations. ATM transactions for your card are limited to $1,000.00 per day. Cash advances are also limited by your Credit limit. Each ATM has a minimum withdrawal amount. Cash advances from a teller must be at least $50.00. See the "EXPANDED ACCOUNT ACCESS" section about other cash advances.

**LIMITS ON LIABILITY FOR VISA® CARD:** Unless you have been grossly negligent or engaged in fraud, you will not be liable for any unauthorized transactions using your lost or stolen card.

**REMEDIES: The exercise of our remedies is subject to (a) any cure, reinstatement and redemption rights you may have; and (b) any notice of such rights to which you are entitled, as provided by state law. We will provide these rights, and notice of them, as required.**

We may terminate your account, require you to pay the entire outstanding balance in one payment and charge you fees related to the collection of the amount owing, if you are in default in any manner described above. In that instance, we may take other action short of termination, such as charging you a fee if you fail to maintain required property insurance and we purchase insurance.

In the event that we terminate your account, we will send you notice of our decision at the address listed on the front of this agreement. (You should inform us of any change in your address.)

Even if we choose not to use one of our remedies when you default, we do not forfeit our right to do so if you default again. If we do not use a remedy when you default, we can still consider your actions as a default in the future.

**SUSPENSION OF CREDIT AND REDUCTION OF CREDIT LIMIT:** We may temporarily prohibit you from obtaining additional extensions of credit, or reduce your credit limit if:
(1) The value of the dwelling securing this home equity Line of Credit declines significantly below its appraised value for purposes of this line;
(2) We reasonably believe you will not be able to meet the repayment requirements due to a material change in your financial circumstances;
(3) You are in default of a material obligation of this agreement, which shall include, but is not limited to, your ongoing obligation to supply us with information we feel we need to assess your financial condition;
(4) A governmental action prevents us from imposing the annual percentage rate provided for in this agreement;
(5) The action of a governmental body adversely affects our security interest to the extent that the value of the security interest is less than 120% of the home equity line;
(6) The annual percentage rate corresponding to the periodic rate reaches the maximum rate allowed under this plan (if provided for in this agreement); or
(7) A regulatory agency has notified us that continued advances would constitute an unsafe business practice.

In the event that we suspend your right to additional advances or reduce your credit line, we will send you notice of our decision at the address listed in this agreement. (You should inform us of any change in your address.) If we have based our decision to suspend or reduce your credit privileges on an assessment of your financial condition or performance under this plan, and you believe that your situation has changed, you must request that we re-evaluate your situation, and reinstate your credit privileges.

*Exper̲ṭ̲* © 1983 Bankers Systems, Inc., St. Cloud, MN Form USBOCPHE-NDX 10/1/2002   (page 4 of 5)

3000137542

**JOINT ACCOUNTS:** If this is a joint account, each of you will be jointly and severally liable for all amounts due under the account. Upon request by either party to the Account or upon receipt of inconsistent instructions, we may, at our option and without notice to the other party, follow the instructions of either party, honor any Check, refuse to pay any Check, or refuse any other request with respect to the Account.

**CREDIT INFORMATION:** You agree to supply us with whatever information we reasonably feel we need to decide whether to continue this plan. We agree to make requests for this information without undue frequency, and to give you reasonable time in which to supply the information.

You authorize us to make or have made any credit inquiries we feel are necessary. You also authorize the persons or agencies to whom we make these inquiries to supply us with the information we request.

### YOUR BILLING RIGHTS
### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

*Notify Us In Case of Errors or Questions About Your Bill*

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.
In your letter, give us the following information:
* Your name and account number.
* The dollar amount of the suspected error.
* Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings, checking or other account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

*Your Rights and Our Responsibilities
After We Receive Your Written Notice*

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases:** If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and
(b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

**EXPANDED ACCOUNT ACCESS**
This is to advise you that, with U.S. Bank, N.A. and its affiliates:

* Any card or PIN issued to or selected by you under this agreement will access multiple checking, savings, Line of Credit and credit card account(s) in your name at Bank or any of its affiliates; and

* Your Account under this agreement may be accessed by any card(s) or PIN(s) that you have selected or that has been issued to you or may in the future be selected by you or issued to you by Bank or any of its affiliates.

"Access" means use of a card or account number and PIN to conduct a transaction or obtain information at ATMs or via telephone, personal computer banking, or any other available method. There are no additional fees or charges for multiple account access. The fees and terms disclosed for each account apply. You understand that at UBank ATMs this multiple account access may be available for up to five checking, five savings, and five Line of Credit or credit card accounts. At other ATMs and with other methods of access, other limitations may apply.

You can, if you wish change this access and restrict the accounts that may be accessed by your card code or pin number.

---

To Residents of Missouri specifically, and residents of other states generally.

**Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

---

This note is a "transferable record" as defined in applicable law relating to electronic transactions. Therefore, the holder of this note may, on behalf of the maker of this note, create a microfilm or optical disk or other electronic image of this note that is an authoritative copy as defined in such law. The holder of this note may store the authoritative copy of such note in its electronic form and then destroy the paper original as part of the holder's normal business practices. The holder, on its own behalf, may control and transfer such authoritative copy as permitted by such law.

SIGNATURES: By signing below, you understand we are a national banking association located in North Dakota and the interest rate and related charges are pursuant to the law of North Dakota and federal law. The law of the state where you are located and of the state where the property is located may apply to other issues. In addition, you agree to the terms on all pages of this agreement and you promise to pay any amounts you owe under this agreement. You also state that you received a completed copy of the agreement on today's date.

CAUTION -- IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

Signature _____

Signature _____

By _____

AUTHENTICATION BY U.S. BANK, N.A.:
U.S. Bank, N.A. affiliate of and agent for the lender on this loan, acknowledges and agrees to the control agreement contained in the Security Interest in deposit accounts, and the subordination of its right of setoff to this security interest if and to the extent of a conflict. This is intended as an authentication.
U.S. BANK, N.A.

**EXHIBIT**
C



# LAMCO
LENDERS ASSET MANAGEMENT CORPORATION

Friday, July 09, 2010

To:       Tonette Hill
From:     Steve Cerny
Phone:    720-881-6923

Property:     831 North 148th Avenue
ID Borrower:  Magni, Richard

Listed below please find the expenses that US Bank has incurred on the Richard Magni property located at 831 North 148th Ave. in Omaha, NE.

Invoiced Management Fee/Inspection Fee:

| Date | | Amount |
|---|---|---|
| May 09 to Dec 09 | 8 mo/$41.25 | $330.00 |
| Jan 10 to July 10 | 7 mo/$46.00 | $322.00 |
| | Total | $652.00 |